## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**JAMES JACKSON, CONNIE FELDHAHN,**
**DOROTHY KYLLONEN**
**On Behalf of Themselves**
**and All Others Similarly Situated,**

                                            **Hon.**

        **Plaintiff,**                        **Case No.**

                                              **PROPOSED CLASS ACTION**

**v.**

**TRANSWORLD SYSTEMS, INC and**
**SHERMETA LAW GROUP PLLC and**
**WELTMAN, WEINBERF & REIS C., LPA**
        **Defendants.**

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiffs, **JAMES JACKSON, CONNIE FELDHAHN and**

**DOROTHY KYLLONEN** (hereinafter "Plaintiff" or "Plaintiffs" or "Jackson" or "Feldhahn" or

"Kyllonen") by and through counsel, The Law Offices of Brian Parker, PC and bring this action

against the above listed Defendants, **TRANSWORLD SYSTEMS, INC. ("TSI" or**

**Defendant), SHERMETA LAW GROUP, PLLC ("Shermeta" or Defendant Shermeta")**

**and WELTMAN WEINBERF & REIS Co., LPA ("Weltman" or "Defendant Weltman")**

on the grounds set forth herein:

### I. PRELIMINARY STATEMENT OUTLINING DEFENDANTS' FILING OF LAWSUITS THROUGHOUT THE STATE OF MICHIGAN WITHOUT THE PROPER OWNERSHIP OF DEBTS OR CHAIN OF TITLE OF OWNERSHIP OF DEBTS TO HAVE STANDING TO SUE MICHIGAN CONSUMERS

Plaintiff brings this action for damages and injunctive relief based upon the Defendants'

violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, The

Regulation of Collection Practices Act (RCPA), codified at MCL 445.251 et seq. and the

Michigan Occupation Code ("MOC"), MCL 339.901 et seq;

1.

Defendant TSI is a Servicer, Custodian of Records and collector of private student loan

debts for a vast network of Education Trusts titled either National Collegiate Trust, National

Collegiate Master Student Loan Trust, or National Collegiate Student Loan Trust (NCSLT) that

employs collection law firms through the State of Michigan to file collection lawsuits for the

NCSLT -2004-1 through NCSLT 2007-3 Trusts below:

*National Collegiate Trust*

Date: 11/3/14

RE:

National Collegiate Master Student Loan Trust-I      National Collegiate Student Loan Trust-2003-1
National Collegiate Student Loan Trust-2004-1         National Collegiate Student Loan Trust-2004-2
National Collegiate Student Loan Trust-2005-1         National Collegiate Student Loan Trust-2005-2
National Collegiate Student Loan Trust-2005-3         National Collegiate Student Loan Trust-2006-1
National Collegiate Student Loan Trust-2006-2         National Collegiate Student Loan Trust-2006-3
National Collegiate Student Loan Trust-2006-4         National Collegiate Student Loan Trust-2007-1
National Collegiate Student Loan Trust-2007-2         National Collegiate Student Loan Trust-2007-3
National Collegiate Student Loan Trust-2007-4

To whom it may concern:

U.S. Bank, as Special Servicer for the above referenced Trust(s), confirms that Transworld Systems Inc. is its
Subservicer, authorized to file Proofs of Claim (POC) on behalf of the above Trust(s) with respect of student loans
owned by the Trust(s). Transworld Systems Inc. is also the dedicated record custodian with respect to all student
loan accounts owned by the Trust(s) and is fully authorized to execute affidavits regarding account documents,
verify responses to discovery and provide testimony on behalf of the Trust(s).

Any questions regarding the above referenced processes should be directed to Transworld Systems Inc. at 1-800-
209-9161

Sincerely,

U.S. Bank National Association
As Special Servicer to the National Collegiate Student Loan Trust(s)

By: _____
    Brian C Tri
    Vice President
Title

**Please See Exhibit 1**.

2.

At **Exhibit 3** and in violation of the FDCPA, RCPA and MOC, Defendant TSI as

Servicer for the NSCLT trusts at **Exhibit 1** is collecting on defaulted student loans through

collection lawsuits filed by Defendants Shermeta and Weltman at the direction of Defendant TSI

even though there is no proof or chain of title from the Original Lender of the student loans to the NCSLT Plaintiffs TSI operates through against Michigan Class Members.   In short, At the time the lawsuits are filed by Defendants for NCSLT, the collection Plaintiff NCSLT has no standing or any minimum proof necessary to take the case to completion or trial. Please see **Exhibit 8** which is the Plaintiffs showing they are sued on debts they dispute and NCSLT has no proof of debt ownership.

3.

Regarding Assignments of Contracts, Defendant Weltman states on its website at **Exhibit 4** that, "For our debt buyer clients, there is now an increased level of proof of the assignment. The general contract, or batch assignment agreement, is no longer sufficient.   A specific assignment, or affidavit supporting a specific assignment, should be supplied that refers to the specific account number. It should also be signed and notarized by the original creditor." The Court of Appeals stated that Michigan's statute of frauds still requires that an assignment of debt be in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise. Jeffrey K. Bearss, Esq. August 02, 2011 at **Exhibit 4** in discussing *Brownbark II LP v. Bay Area Floorcovering & Design Inc.* et al, Michigan Court of Appeals Case No. 296660, Decided May 31, 2011.

4.

Because the assignment occurred through the contract, absent evidence of the contract showing the specific assignment from the Original Lender to the NCSLT Plaintiff, the State and local court pleading containing NCSLT's bare assertion of the assignment is insufficient to establish factual support for plaintiff's claim that it acquired defendant's account by assignment. See *Unifund CCR Partners v. Nishawn Riley*, Michigan Court of Appeals Case No. 287599, February 18, 2010.

5.

The Georgia Court of Appeals in *Wirth v. CACH, LLC*, 300 Ga. App. 488, 490-491, 685 S.E.2d 433, 435-436 (2009) held that *CACH* had failed to provide any proof of an assignment or transfer from a Providian debt to WAMU. The record is also devoid of any evidence which reflects that Washington Mutual purchased Providian to support the chain of assignment to CACH. See also *Ponder v. CACV of Colorado, LLC*, 289 Ga. App.858, 859 (658 SE2d 469) (2008) (record was devoid of evidence supporting CACV's allegation that it was the successor in interest to Fleet Bank's right to recover any outstanding debt from Ponder). See *Cach, LLC v. Askew*, 358 S.W.3d 58, 62 (Mo. 2012) (citing *Midwestern Health Mgmt., Inc. v. Walker*, 208 S.W.3d 295, 298 (Mo. App. 2006)) (requiring "every link in the chain between the party to which the debt was originally owed and the party trying to collect the debt must be proven by competent evidence in order to demonstrate standing.")

6.

Other than as corporate entities or placeholders for vast student loan trusts, NCSLT Trusts don't function and Servicer Defendant TSI directs all the collection efforts to file claims on debts where the paperwork and proof of ownership has long ago ceased to exist. National Collegiate is an umbrella name for 15 trusts that hold 800,000 private student loans, totaling $12 billion. More than $5 billion of that debt is in default, according to court filings. The trusts aggressively pursue borrowers who fall behind on their bills. See *https://www.nytimes.com/2017/07/17/business/dealbook/student-loan-debt-collection.html?mcubz=3*. **Exhibit 2**.

7.

The New York Times recently investigated these NCSLT lawsuits and found that, "Transworld Systems, a debt collector, brings most of the lawsuits for National Collegiate

against delinquent borrowers. And in legal filings, it is usually a Transworld representative who swears to the accuracy of the records backing up the loan. Transworld did not respond to a request for comment." See *https://www.nytimes.com/2017/07/17/business/dealbook/student-loan-debt-collection.html?mcubz=3*. **Exhibit 2**.   Please also see **Exhibit 9** of the type of Affidavits filed in Michigan Courts by TSI for NCSLT that the NY Times article talks about.

8.

The New York attorney general, Eric T. Schneiderman, has opened an investigation into the collection practices of the National Collegiate Student Loan Trusts. National Collegiate' s trusts have aggressively pursued in court borrowers who fall behind on their student loan payments. An article this week in The New York Times drew attention to the trusts' inability in many of those lawsuits to produce the paperwork needed to prove that the trusts own the debts they seek to collect. Judges around the country have dismissed dozens of cases filed by National Collegiate' s trusts because of flawed or missing paperwork. **Please see Exhibit 2**.

*https://www.nytimes.com/2017/07/19/business/dealbook/new-york-inquiry-national-collegiate-student-loan-trusts.html?mcubz=3*

9.

TSI directs its Michigan collection law firms Defendant Shermeta and Defendant Weltman to pursue Michigan consumers without proof of ownership of the specific debt being sued upon.   Defendant TSI, as the alleged servicer of the NCSLT loans (**Exhibit 1**) along with the collection law firms, Shermeta and Weltman all know they cannot make out a prima facie case demonstrating the existence or ownership of any of the education debts at the very beginning of the lawsuit against Michigan consumers. **Please see Exhibit 3 for lawsuit examples**.

10.

In the widespread practice of submitting general "Pool Supplements" and "Sale

Agreements" and TSI Affidavits along with the from the huge NCSLT Education Trusts in state and local lawsuits, the NCSLT Plaintiff offers paperwork that creates the illusion that the specific NCSLT Trust that is suing the debtor has a right to sue on the debt.

11.

Here in Michigan, the (Pool Supplement) paperwork is attached to lawsuits and discovery responses in state and local courts is added to the lawsuit to obtain evidentiary credibility to obtain thousands of default judgments or settlements against consumers for phantom debts NCSLT or TSI does not have standing to pursue. Indeed most, if not all, of the judgments PRA obtains are default judgments or based on settlement agreements with consumers on debts and settlements Michigan consumers are forced into accepting even though the NCSLT Plaintiff never had the right to pursue the case or the settlement that is seeks against the debtor.

12.

TSI is aware that significant inaccuracies may exist in the Sale Files of debts it Services and pursues for NCSLT as they lack sufficient account-level proof of ownership by the entity suing the Michigan consumer—or access to anyone with personal knowledge of a consumer's account—and TSI and the Defendant law firms know they cannot make out a prima facie case demonstrating the existence of any of its consumer debts.

13.

Indeed, A random sample of nearly 400 NCSLT loans found not a single one had assignment paperwork documenting the chain of ownership, according to a report that the National Collegiate's beneficial owner had prepared. "As Paperwork Goes Missing, Private Student Loan Debts May be Wiped Away," **Page 6 at Exhibit 2**. See *https://www.nytimes.com/2017/07/17/business/dealbook/student-loan-debt-collection.html?mcubz=3.*

14.

To constitute a valid assignment there must be a perfected transaction between the parties which is intended to vest in the assignee a present right in the thing assigned. *Weston v Dowty*, 163 Mich App 238, 242; 414 NW2d 165 (1987).

15.

Thus, TSI and the Defendant law firms are behind a state-wide scheme designed to eliminate the "Burden" in the Burden of Proof and deceive Michigan residents into paying or settling a defaulted private student loan in State courts where the Plaintiff NCSLT lacks proof of ownership and assignments in creating material and false representations to support computer template lawsuits that lack supporting documentation in violation of the FDCPA, RCPA and MOC.

**II. PARTIES**

16.

Defendant TSI is a foreign corporation located in the State of California with a Resident Agent address at 40600 Ann Arbor Road, E Ste. 201, Plymouth, MI 48170. TSI and is a debt collector that services and collects large portfolios of *defaulted student loans* for NCSLT under 15 U.S.C. 1692a (6) through its own employees and Michigan law firms by filing collection lawsuits supported by false and hearsay documents in the 83 counties throughout the State of Michigan. **Please see Exhibit 3 which are the three examples of the template lawsuits filed as collection attempts**.

17.

Defendant TSI claims to be the Subservicer acting on behalf of NCSLT (**Exhibit 1**) trusts and entities and also claims to be the dedicated custodian of records for the trusts to

avoid any focus on the NCSLT entity. In response to discovery or motion to compel

discovery, TSI executes Affidavits, verifies responses to discovery and provides testimony on

behalf of the various NCSLT student loan trusts. Plaintiff is informed and believes, and

thereon alleges, that TSI provides information to Defendant Weltman and Defendant

Shermeta in an attempt to collect a consumer debt from Plaintiffs and the proposed Michigan

class members.

18.

U.S. Bank contracted with Transworld to act as Sub-Servicer to act as Special Sub-

Servicer for each National Collegiate trust. (**Exhibit 1**). Defendant TSI is a "collection

agency" and/or "licensee" as the terms are defined and used in the in the RCPA and MOC.

During all times pertinent hereto, TSI directly and indirectly participated in the unlawful debt

collection practices to collect an student loan debt from Plaintiffs that are described in this

complaint in violation of state and federal law.

19.

Defendant Weltman, Weinberg & Reis, L.P.A. ("Weltman") is a law firm organized as an

Ohio professional corporation with principal offices at 323 W. Lakeside Ave., Suite 200,

Cleveland, OH 44113. Weltman is a law firm collection agency collecting student loan debt for

NCSLT entities and TSI under the FDCPA, RCPA and MOC. Weltman operates in Michigan

from an address of 2155 Butterfield Dr., Suite 200-S, Troy, Michigan 48084. **Please see Exhibit**

**4**. The alleged debt being collected by Weltman is a "debt" as defined by 15 U.S.C. §1692a (5).

The alleged mortgage debt is a "consumer debt" as defined by the RCPA under MCL

445.251(a). Weltman is a "collection agency" and/or "licensee" as the terms are defined and used

in the MOC.

20.

Regarding Assignments of Contracts, Weltman states on its website at **Exhibit 4** that, "For our debt buyer clients, there is now an increased level of proof of the assignment. The general contract, or batch assignment agreement, is no longer sufficient.   A specific assignment, or affidavit supporting a specific assignment, should be supplied that refers to the specific account number. It should also be signed and notarized by the original creditor." Jeffrey K. Bearss, Esq. August 02, 2011 at Exhibit 5 in discussing **Brownbark II LP v. Bay Area Floorcovering & Design Inc. et al**, Michigan Court of Appeals Case No. 296660, Decided May 31, 2011.

21.

Shermeta Law Group PLLC ("Shermeta") are debt collectors under the FDCPA and RCPA and a Michigan Corporation with a Resident Agent address of 1030 Doris Road, Auburn Hills, MI 48326.   Shermeta' s "principle purpose" is to collect debts under the FDCPA as a collection law firm engaged in the business of using the mail, public notices and telephone to collect consumer debts originally owed to others, including student loan debts for entities such as NCSLT and TSI. **Please see Exhibit 5**. The alleged debt being collected by Weltman is a "debt" as defined by 15 U.S.C. §1692a (5). The alleged mortgage debt is a "consumer debt" as defined by the RCPA under MCL 445.251(a). Weltman is a "collection agency" and/or "licensee" as the terms are defined and used in the MOC.

22.

The FDCPA applies to lawyers regularly engaged in consumer debt-collection litigation. *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Schroyer v. Frankel*, 197 F.3d 1170, 1173-74 (6th Cir. 1999). Defendants Weltman and Shermeta regularly file NCSLT state court

lawsuits for Defendant TSI seeking to collect a debt that is in default at the time of the filing of the lawsuit on behalf of its clients and therefore is a debt collector. See *Heintz* at 514 U.S. 291, 299 (1995).

23.

Plaintiff James Jackson is located in the City of Brownstown, County of Wayne, State of Michigan and considered a Consumer under the FDCPA and RCPA. **Exhibit 3 contains the lawsuit against Mr. Jackson**.

24.

Plaintiff Dorothy Kyllonen is located in the City of Essexville, Bay County, State of Michigan and considered a Consumer under the FDCPA and RCPA. **Exhibit 3 contains the lawsuit against Ms. Kyllonen**.

25.

Plaintiff Connie Feldhahn is located in the City of Lansing, County of Ingham, State of Michigan and considered a Consumer under the FDCPA and RCPA. **Exhibit 3 contains the lawsuit against Ms. Feldhahn**.

## III. JURISDICTION AND VENUE

26.

Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337. This court has jurisdiction over this Complaint pursuant to the FDCPA, 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here. Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. § 1367. *Baltierra v. Orlans Associates PC*, No. 15-cv-10008 (E.D. Mich. Oct. 7, 2015).

27.

The factual basis of the RCPA claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.   28 U.S.C. § 1367(a). *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (stating that FDCPA claims and RCPA claims are simply duplicates and "need not be addressed separately").

28.

Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and the Defendants are subject to personal jurisdiction in the State of Michigan at the time this action is commenced.

## IV. STATUTORY STRUCTURE

## FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

29.

The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuse. 15 U.S.C. § 1692.

30.

Plaintiffs are consumers. Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a (3).

31.

Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to

pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a (5).

32.

Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose for which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. 15 U.S.C. § 1692a (6).

33.

The Defendants regularly attempt to collect consumer debts alleged to be due another (NCSLT) and are debt collectors as provided in 15 U.S.C. 1692a (6). The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation.   Whether a debt collector's actions are false, deceptive, or misleading under § 1692(a)-g is based on whether the "least sophisticated consumer" would be misled by a defendant's actions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir).

34.

Whether a debt collector's actions are false, deceptive, or misleading under §1692e is based on whether the "least sophisticated consumer" would be misled by defendant's actions. *Wallace v. Washington Mutual Bank*, 683 F.3d. 323, 327 (6th Cir. 2012), *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006). See *Currier v First Resolution Inv. Corp.*, 762 F. 3d 529, 535 (6th Cir. 2014); *Statton v Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 450 (6th Cir. 2014).

35.

Section 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1) -(16). Among the *per se* violations prohibited by that section are using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10).

36.

Section 1692e further provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(**2**)The false representation of—
(**A**) the character, amount, or legal status of any debt; or
(**B**) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(**5**) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(**10**) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## REGULATION OF MICHIGAN COLLECTION PRACTICES ACT (RCPA)

37.

The Regulation of Michigan Collection Protection Act (RCPA), MCL 445.251 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties

of certain state agencies; and to provide penalties and civil fines.

38.

"Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes.

39.

"Collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another, or repossessing or attempting to repossess a thing of value owed or due or asserted to be owed or due another person, arising out of an expressed or implied agreement. Collection agency includes a person representing himself or herself as a collection or repossession agency or a person performing the activities of a collection agency, on behalf of another, which activities are regulated by Act No. 299 of the Public Acts of 1980, as amended, being sections 339.101 to 339.2601 of the Michigan Compiled Laws. Collection agency includes a person who furnishes or attempts to furnish a form or a written demand service represented to be a collection or repossession technique, device, or system to be used to collect or repossess claims, if the form contains the name of a person other than the creditor in a manner indicating that a request or demand for payment is being made by a person other than the creditor even though the form directs the debtor to make payment directly to the creditor rather than to the other person whose name appears on the form. Collection agency includes a person who uses a fictitious name or the name of another in the collection or repossession of claims to convey to the debtor that a third person is collecting or repossessing or has been employed to collect or repossess the claim.

40.

Defendants are regulated agencies under the RCPA. See *Misleh* v *Timothy E. Baxter & Associates*, 786 F Supp. 2d 1330(E.D. Mich 2011; *Newman v. Trott & Trott, PC*, 889 F. Supp. 2d 948 - Dist. Court, ED Michigan 2012; *Baker v. Residential Funding Co., LLC*, 886 F. Supp. 2d 591 - Dist. Court, ED Michigan 2012.

41.

"Communicate" means the conveying of information regarding a debt directly or indirectly to a person through any medium.

42.

"Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a debt.

43.

"Creditor" or "principal" means a person who offers or extends credit creating a debt or a person to whom a debt is owed or due or asserted to be owed or due. Creditor or principal does not include a person who receives an assignment or transfer or a debt solely for the purpose of facilitating collection of the debt for the assignor or transferor. In those instances, the assignor or transferor of the debt shall continue to be considered the creditor or the principal for purposes of this act.

44.

"Person" means an individual, sole proprietorship, partnership, association, or corporation. Defendants are regulated persons under § 445.251(g)(xi). Defendants are violating the following RCPA subsections:

**445.252 Prohibited acts.**

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or credit bureau unless the regulated person is an attorney or is a credit bureau and it is disclosed that it is the collection department of the credit bureau; and

(b) Using forms or instruments which simulate the appearance of judicial process; and

(d) Using forms that may otherwise induce the belief that they have judicial or official sanction.

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt; and

(f) Misrepresenting in a communication with a debtor 1 or more of the following:

(i) The legal status of a legal action being taken or threatened.

(ii) The legal rights of the creditor or debtor.

(iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property; and

(n) Using a harassing, oppressive, or abusive method to collect a debt…

(q) Failing to implement a procedure designed to prevent a violation by an employee.

45.

The Plaintiff, on behalf of himself and all others similarly situated, seeks Statutory Damages, ACTUAL DAMAGES, INJUNCTIVE RELIEF, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court in a Class Action context, pursuant to the FDCPA, RCPA/MOC and all other common law or statutory regimes. The Plaintiff, on behalf of himself and all others similarly situated requests that she and the class members be awarded:

a. Their Actual Damages suffered by the class members like Plaintiffs who are subject to the same the same collection/affidavit scheme or plan to burden debtors into not responding to collection lawsuits,

b. Injunctive Relief stopping Defendants from continuing their plan and scheme through debt collection lawsuits as alleged here

c. Attorney fees and costs under the FDCPA and RCPA/MOC.

## MICHIGAN OCCUPATIONAL CODE (MOC)

46.

The Michigan Occupational Code (MOC), MCL 339.901 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines and requires that collection agencies are licensed in the State of Michigan unless their collection activities are exclusively limited to interstate activities.

47.

"Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes.

48.

"Collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another, or repossessing or attempting to repossess a thing of value owed or due or asserted to be owed or due another person, arising out of an expressed or implied agreement. Collection agency includes a person representing himself or herself as a collection or repossession agency or a person performing the activities of a collection agency, on behalf of another, which activities are regulated by Act No. 299 of the Public Acts of 1980, as amended, being sections 339.101 to 339.2601 of the Michigan Compiled Laws. Collection agency includes a person who furnishes or attempts to furnish a form or a written demand service represented to be a collection or repossession technique, device, or system to be used to collect or repossess claims, if the form contains the name of a person other than the creditor in a

8

manner indicating that a request or demand for payment is being made by a person other than the creditor even though the form directs the debtor to make payment directly to the creditor rather than to the other person whose name appears on the form. Collection agency includes a person who uses a fictitious name or the name of another in the collection or repossession of claims to convey to the debtor that a third person is collecting or repossessing or has been employed to collect or repossess the claim. Defendants are collection agencies as stated in their own websites and letters.

49.

"Communicate" means the conveying of information regarding a debt directly or indirectly to a person through any medium. Defendants are communicating with Michigan consumers through letters and by lawsuits. See Defendants' own lawsuits against debtors in Michigan alleging this.

50.

"Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a debt. Plaintiff is a consumer under the MOC.

51.

"Creditor" or "principal" means a person who offers or extends credit creating a debt or a person to whom a debt is owed or due or asserted to be owed or due. Creditor or principal does not include a person who receives an assignment or transfer or a debt solely for the purpose of facilitating collection of the debt for the assignor or transferor.

52.

The MOC's reference to "[a]n attorney handling claims and collections on behalf of a client and in the attorney's own name," is better understood as encompassing *both* attorneys who handle claims and collections on behalf of a client *and* attorneys who seek to collect a debt owed

to themselves or their firms. *Misleh v. Timothy E. Baxter & Associates*, 786 F. Supp. 2d 1330 - Dist. Court, ED Michigan 2011.

53.

Even if the person, corporation, entity or business such as Defendants is not required to be licensed under MCL 339.901 et seq. the MOC does require Defendant are subject to the "other requirements that regulate collection practices" under MCL 339.904(2).

54.

Defendants are violating the following MOC subsections under MCL 339.915:

**339.915 Licensee; prohibited acts.**

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or the stationery of a credit bureau unless it is disclosed that it is the collection department of the credit bureau.

(b) Using forms or instruments which simulate the appearance of judicial process.

(d) Using forms that may otherwise induce the belief that they have judicial or official sanction.

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.

(f) Misrepresenting in a communication with a debtor any of the following:

(i) The legal status of a legal action being taken or threatened.

(ii) The legal rights of the creditor or debtor.

(iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property.

(n) Using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places which are known to be inconvenient to the debtor. All communications shall be made from 8 a.m. to 9 p.m. unless the debtor expressly agrees in writing to communications at another time. All telephone communications made from 9 p.m. to 8 a.m. shall be presumed to be made at an inconvenient time in the absence of facts to the contrary.

(q) Failing to implement a procedure designed to prevent a violation by an employee.

55.

Defendants Weltman and Shermeta are filing claims for collections, sharing office space and resources in collecting debts from Michigan consumers and identifying themselves as attorneys in communications through "NCSLT" lawsuits for Defendant TSI and are violating the following MOC subsections under MCL 339.915a:

**339.915a**

(a) Listing the name of an attorney in a written or oral communication, collection letter, or publication.

(b) Furnishing legal advice, or otherwise engaging in the practice of law, or representing that the person is competent to do so, or to institute a judicial proceeding on behalf of another.

(c) Sharing quarters or office space, or having a common waiting room with a practicing attorney or a lender.

(d) Employing or retaining an attorney to collect a claim. A licensee may exercise authority on behalf of a creditor to employ the service of an attorney if the creditor has specifically authorized the collection agency in writing to do so and the licensee's course of conduct is at all times consistent with a true relationship of attorney and client between the attorney and the creditor. After referral to an attorney, the creditor shall be the client of the attorney, and the licensee shall not represent the client in court. The licensee may act as an agent of the creditor in dealing with the attorney only if the creditor has specifically authorized the licensee to do so in writing.

(f) Soliciting, purchasing, or receiving an assignment of a claim for the sole purpose of instituting an action on the claim in a court.

56.

The Plaintiff, on behalf of himself and all others similarly situated, seeks ACTUAL DAMAGES, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court in a Class Action context, pursuant to the MOC and the RCPA and all other common law or statutory regimes. The Plaintiff, on behalf of himself and all others similarly situated requests that she and the class members be awarded:

    d.  Their Actual Damages suffered by the class members like Plaintiffs who are subject to

        the same the same collection/lack of proof scheme or plan to burden debtors into not

responding to collection lawsuits,

e.  Injunctive Relief stopping Defendants from continuing their plan and scheme through letters and debt collection lawsuits as alleged here

f.  Attorney fees and costs under the MOC and RCPA.

57.

The RCPA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use of the "least sophisticated consumer" standard. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)) held that "§ 445.252(e) applies to Defendant, its analysis is similar to that under § 1692e of the FDCPA, both of which bar misleading and deceptive communications… In light of the similarity between 15 U.S.C. § 1692e 15 U.S.C. § 1692g and these causes of action, it appears appropriate to view Plaintiff's claims under the same "least sophisticated consumer" standard.

## V. CLASS ACTION ALLEGATIONS

58.

This Action is brought on behalf of Plaintiffs and the class members under the FDCPA, MOC and RCPA with the class made up of the following class consumers:

All persons against whom Defendants filed a STATE COLLECTION COMPLAINT and/or obtained a settlement, default or default judgment or judgment related to the collection of an NCSLT type education debt without sufficient, admissible evidence or based on collection cases that lacked assignments or proof showing that the NCSLT type Plaintiffs had standing or the right to sue Michigan class members through these STATE COLLECTION COMPLAINTS with Defendant law firms signing off on material misrepresentations of debt ownership on behalf of Defendant TSI.

8

59.

While the exact number of Class members can only be determined through appropriate discovery, Plaintiff believes that there are thousands of members of the Class through Michigan in the last six years.

60.

Plaintiff's claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct, as complained of herein.

61.

There are common questions of law and fact affecting members of the Class, which common questions predominate over questions that might affect individual members. These questions include, but are not necessarily limited to, the following:

    a.    Whether Defendants sued Michigan class members without standing or proof of ownership or assignment of ownership of the SPECIFIC debt each Michigan consumer is being sued upon. In short: Defendants held no chain of title showing the SPECIFIC debt is owned by the NCSLT Plaintiff suing the Michigan Consumer.;

    b.    Whether Defendants had sufficient evidence of the existence of the alleged NCSLT type education debts when they negotiated settlements or obtained default judgments against Michigan consumers;

    c.    Whether the alleged debtors and Michigan consumer were furnished with chain of title evidence showing NCSLT had the right to sue the SPECIFIC Michigan debtor on the Specific NCSLT debt the State Lawsuits were based upon;

    d.    Whether Defendants filed materially false and deceptive lawsuits where NCSLT had no standing to sue Michigan consumers on debts NCSLT had not proof it owned the debt of the person or consumer it is suing;

    e.    Whether Defendants are filing NCSLT type lawsuits knowing that they lack the necessary paperwork and proof to complete or try the case and are filing the lawsuits for a default or settlement of the claim.

f.      Whether Plaintiff and the other members of the Class are entitled to damages, including punitive damages, costs, and/or attorneys' fees, for Defendants' acts and conduct as alleged herein, and the proper measure thereof.

62.

Plaintiff will fairly and adequately represent the Class members. Plaintiff has no interests that conflict with the interests of other Class members. Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

63.

A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members might be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

64.

Members of the Class can be identified from records maintained by Defendants and each class member is a Defendant in a State Court Action by NCSLT/TSI collecting an NCSLT type debt, and can be notified of the pendency of this action by United States mail using a form of notice customarily used in similar class actions.

## VI. FACTUAL ALLEGATIONS

65.

At **Exhibit 3** and in violation of the FDCPA, RCPA and MOC, Defendant TSI as Servicer for the NSCLT trusts at **Exhibit 1** is collecting on defaulted student loans through collection lawsuits filed by Defendants Shermeta and Weltman at the direction of Defendant TSI even though there is no proof or chain of title from the Original Lender of the student loans to

the NCSLT Plaintiffs TSI operates through in suing Michigan Class Members.

66.

    As detailed in the State Complaints against Plaintiffs in **Exhibit 3** specifically and

against Michigan consumers generally at **Exhibit 1**, Defendant TSI is suing Class members

through NCSLT Plaintiffs on educational loans allegedly owed to TSI and NCSLT from 2004

through 2007. The lawsuits are brought by Defendant law firms, Shermeta and Weltman at the

instruction and request by Defendant TSI even though the Defendants have no assigned proof

of ownership of the SPECIFIC DEBT claimed to be owed the class members to the NCSLT

Plaintiff in these state actions examples of which are at **Exhibit 3**.

67.

    As of the time that the NCSLT type State and local lawsuits are filed by the Defendant

law firms for the NCSLT Servicer, Defendant TSI, there exists no chain of title from the Original

Lender of the student loans to the SPECIFIC NCSLT Plaintiff in the state lawsuits and the

lawsuits are filed and served with no or proof of ownership of the debt NCSLT Plaintiff.

68.

As shown by **Exhibit 3**, the NCSLT type State and Local lawsuits that TSI directs its

Michigan collection law firms to file in the State of Michigan all say the NCSLT Plaintiff has

been assigned the debt while offering no proof of the specific chain of title of assignment of the

debt of the debtor being "assigned" to NSCLST.

69.

    While fully aware that it cannot actually demonstrate the existence of any assignment of

the SPECIFIC debts it is suing Michigan debtors for in State and local courts, TSI and their

Defendant attorneys file "computer template" collection lawsuits alleging to be the owners of

debts they are suing upon without any specific proof of debt to the SPECIFIC Michigan

8

consumer alleged to owe the debt. **Please see Exhibit 3**.

70.

TSI's sole intention is to obtain default judgments or settlements of the state or local lawsuits without ever having had admissible prima facie evidence to substantiate its claims through the NCSLT Plaintiffs. During the Class Period Defendants have filed thousands of debt-collection lawsuits state-wide all similar in shape and format to **Exhibit 3**.

71.

Upon information and belief, at large percentage of the lawsuits that Defendants file against consumers resulting in default judgments. This is because the vast majority of the legal actions that Defendant law firms file for NCSLT go uncontested, allowing TSI to collect on alleged debts that either are invalid or no proof of ownership.

72.

Defendants take advantage of the fact that, under most states' civil procedure law, the public employees who oversee the default-judgment process engage in a largely ministerial function, relying upon the representations and certifications of the attorneys who practice before the court. Given that tens of thousands of such lawsuits are filed every year, judicial system personnel would be overwhelmed if they had to investigate the validity of each and every default judgment application.

73.

Here and as is perpetrated throughout the State of Michigan, Defendants file collection claims using "Pool Supplements" to create a false belief in consumers and courts that they have the assigned right to collect on Specific debts they are suing upon. **Please see Exhibit 6**. Defendant Attorneys sign off on the lawsuits knowing the Plaintiff NCSLT entity or TSI lack the require assignment and chain of title paperwork necessary to prove they have a right to sue the

8

state or local court Defendant or class members. **Please see Exhibit 3**.

74.

An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. See, e.g., *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3rd Cir. 2000). Courts apply vicarious liability to debt collectors like TSI and Defendant law firms even when the debt collector they hire is an attorney. See, e.g., *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir.1994) (holding a debt collector vicariously liable for an attorney's violation of the FDCPA venue provision).

75.

Further, if the debts are being assigned to Defendant TSI to use Defendant law firms to prosecute Michigan collection lawsuits for NCSLT trusts and entities, in the alternative, Defendants don't have standing to bring the lawsuits as licensees (MCL 339.904(2)) and a collection agency under MCL 339.901(b) .

76.

Defendants are considered collection agencies under MCL 339.901(b) as they "a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another, or repossessing or attempting to repossess a thing of value owed or due or asserted to be owed or due another arising out of an expressed or implied agreement."

77.

M.C.L. §  339.915a(f); MSA 18.425(915a)(f) provides that a licensee under the MCPA is prohibited from "soliciting, purchasing, or receiving an assignment of a claim for the sole

purpose of instituting an action on the claim in a court." TSI is claims to be the Servicer for NCSLT (**Exhibit 1**) and in the state complaints at **Exhibit 3**, has Defendant law firms file collection law suits for NCSLT Plaintiffs and state for example:

- a loan made to Defendant by Charter One Bank, N.A. with was subsequently assigned to Plaintiff, National Collegiate Student Loan Trust 2007-1 in **Paragraph 6** in the lawsuit against Mr. James Jackson at **Exhibit 3**;

- in **Paragraph 4** of the lawsuit against Ms. Kyllonen, the pleadings state "the contract was duly assigned, in the normal course of business, to Plaintiff," at **Exhibit 3**; and

- in **Paragraph 4** of the lawsuit against Ms. Feldhahn, the pleadings state "the contract was duly assigned, in the normal course of business, to Plaintiff," at **Exhibit 3**.

78.

MCL 339.901(e) states that, "Creditor or principal shall not include a person who receives an assignment or transfer of a debt solely for the purpose of facilitating collection of the debt for the assignor or transferor. As NCLST, TSI and the Defendant law firms are each "an entity that receives a debt in default for the purpose of collecting the debt is not a creditor and is therefore a debt collector/collection agency subject to the act."

79.

If as Defendants claim that they were suing Michigan class members with the original lender on the education loans assigning them the debt, then Defendant TSI (**Exhibit 1**) and Defendant law firms were assigned the Default student loan debts to file legal collection claims against Michigan debtors in collection lawsuits *for the purpose of "facilitating collection of the debt for the assignor or transferor"* for NCSLT entities. Please see **Exhibit 3**.

8

80.

Defendants did not have standing to bring these collection lawsuits under the following

provisions of the Michigan collection practices act M.C.L. §  339.901 et seq.;   MSA 18.425(901)

et seq.  that prohibit the following actions by a licensed collection agency:

(b)  Furnishing legal advice, or otherwise engaging in the practice of law, or representing that the
person is competent to do so, or to institute a judicial proceeding on behalf of another.

(d)  Employing or retaining an attorney to collect a claim.    A licensee may exercise authority on
behalf of a creditor to employ the service of an attorney if the creditor has specifically authorized
the collection agency in writing to do so and the licensee's course of conduct is at all times
consistent with a true relationship of attorney and client between the attorney and the creditor.
After referral to an attorney, the creditor shall be the client of the attorney, and the licensee shall
not represent the client in court.   The licensee may act as an agent of the creditor in dealing with
the attorney only if the creditor has specifically authorized the licensee to do so in writing.

(f)  Soliciting, purchasing, or receiving an assignment of a claim for the sole purpose of
instituting an action on the claim in a court.   [MCL 339.915a(b), (d), and (f).

81.

**339.915a Licensee; additional prohibited acts.**

Sec. 915a.

A licensee shall not commit any of the following acts:

(a) Listing the name of an attorney in a written or oral communication, collection letter, or
publication.

(b) Furnishing legal advice, or otherwise engaging in the practice of law, or representing that the
person is competent to do so, or to institute a judicial proceeding on behalf of another.

(c) Sharing quarters or office space, or having a common waiting room with a practicing attorney
or a lender.

(d) Employing or retaining an attorney to collect a claim.

82.

Defendants are violating 339.915a (a), (b), (c), (d) and (f) as demonstrated by the lawsuits

at **Exhibit 3** and the Defendant law firm collection letters attached at **Exhibit 7**.

8

## VII. CLASS ACTION ALLEGATIONS

83.

Plaintiff tentatively defines two classes including all persons in the State of Michigan who, during the one year (FDCPA) and six years (RCPA/MOC prior to the filing of this complaint were the victims of "NCSLT/TSI Collection Lawsuits" created by Defendants in violation of Federal and State law.

84.

The FDCPA Class consists of all persons with a Michigan address that are subject to the Defendants' collection lawsuits in violation of § 1692e, § 1692e (10), § 1692e (5), § 1692e (2)(A), § 1692f and § 1692d.

85.

The RCPA/MOC Class consists of all persons with a Michigan address that have received Defendant collection lawsuits in violation of MCLA 445.252(n), MCLA 445.252(e), MCLA 445.252(a), MCLA 445.252(f) and MCLA 445.252(q).

86.

There are questions of law and fact common to each class, which common issues predominate over any issues involving only individual class members. The principal and common issue is whether Defendants' conduct in connection with the collection of a debt violates the FDCPA and RCPA/MOC.

87.

There are no individual questions here. All Michigan class members receive the same or similar computer template "NCSLT Collection Lawsuits" with lacking assignment, proper

documentation and chain of title ownership and the proper standing to sue the Michigan violation of the FDCPA and RCPA/MOC.

88.

Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to vigorously litigating this matter. He is greatly annoyed at being the victim of Defendants' illegal practices and wishes to see that the wrong is remedied. To that end, he has retained counsel experienced in litigating consumer advocacy and class claims. Neither Plaintiff nor their counsel has any interests which might cause them to not vigorously pursue this claim.

89.

Plaintiff claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theories out of **Exhibits 1, 3 and 6**. Please see **Exhibit 8** which is the Plaintiffs showing they are sued on debts they dispute and NCSLT has no proof of debt ownership.

90.

A class action is a superior method for the fair and efficient adjudication of this controversy. Most of the consumers who are subject to this practice and policy of Defendant undoubtedly have no knowledge that their rights are being violated by illegal collection practices. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum damages in an individual action are $1,000. Management of this class claim is likely to present significantly fewer difficulties than those presented in many class claims, e.g, for securities fraud.

91.

Certification of each class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure is appropriate because:

(a)     The questions of law and fact common to the members of each class predominate over any questions affecting an individual member: and

(b)     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

93.

There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.   The predominant questions are:

a.  Whether defendants had a practice of using filing NCSLT collection lawsuits without standing, proper paperwork or ownership/chain of title of the debts Defendants are suing upon against Michigan class members and consumers in violation of the FDCPA and RCPA/MOC

94.

Certification of each class under Rule 23(b)(2) of the Federal Rules of Civil Procedure also is appropriate because Defendants have acted on grounds generally applicable to each class, thereby making declaratory and injunctive relief appropriate with respect to each class as a whole.

95.

Plaintiff requests certification of a hybrid class action, combining the elements of FRCP 23(b)(3) for monetary damages and FRCP 23(b)(2) for equitable relief.

## VIII. CLAIMS FOR RELIEF

### Class 1-Fair Debt Collection Practices Act

96.

8

Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a.    Defendant violated 15 U.S.C. 1692e and 15 U.S.C. 1692e (10) by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt using the collection methods at **Exhibit 3 and 6** above that are material to due process and the response of the consumer who is being sued with false documentation and missing proof of chain of title as to the ownership of defaulted student loan date under **Exhibit 1** as used by Defendants; and

b.    Defendant collected on the debt and violated 15 U.S.C. 1692f by using unfair and unconscionable means to collect a debt by suing debtors with the goal of seeking a default or forced settlement with the use of false information attached to lawsuits; and

c.    Defendants Weltman and Shermeta collected on the debt and violated 15 U.S.C. 1692f (1) with no proof, chain of title or transfer, authorization to collect any amount, interest, fee or any charges in lawsuits with no chain of title proving ownership by NCSLT or TSI of the SPECIFIC education debt Weltman and Shermeta sign their names at **Exhibit 3**; and

d.    Defendants collected on the student loan debt and violated 15 U.S.C. 1692e (5) by filing debt collection lawsuits with no standing or chain of titles necessary to show that the debt being sued upon is owned by the specific NCSLT Plaintiff or owed by the Specific debtor at **Exhibit 3** to falsely accuse, threaten and sue class members without the necessary proof and seek default judgments or forced settlements; and

e.    The Defendant violated 15 U.S.C. §1692e(2)(A) in falsely representing that a collection lawsuit is justified and the NCSLT entity Plaintiff in **Exhibit 3** has standing and a proper chain of title as stated above; and

f.    Defendant TSI and Defendant law firms violated 15 U.S.C. 1692e and 15 U.S.C. 1692e (14) by approving and verifying false lawsuits in the name of NCSLT entities when Defendant TSI is pulling all of the legal strings and is the true name of the debt collector and not NCSLT.

**Wherefore**, Plaintiff seeks judgment against Defendants for:

a.    Statutory and Actual damages for Plaintiff pursuant to 15 U.S.C. 1692k(a)(2)(A) and (B); and

b.    Statutory damages for the members of the FDCPA Class, *pro rata,* in the amount of the lesser of $500,000.00 or one percent centum of the net worth of Defendants pursuant to 15 U.S.C. 1692k(a)(2)(B); and

c.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692k(a)(3); and

d.    Actual Damages in the form of the required elevated responses, stress and out of pocket costs of having to respond to a false debt collection lawsuit under MCL 600.2145 (**Exhibit 2**); and

e.    Such further relief as the court deems just and proper.

## Class 2- RCPA CLASS ALLEGATIONS FOR ACTUAL DAMAGES AND INJUNCTIVE RELIEF

### 97.

Defendants have violated the RCPA. Defendant's violations of the RCPA include, but are not necessarily limited to, the following:

a.    Defendants violated MCLA 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt, using **Exhibit 3 and 6** as mentioned above;

b.    Defendants violated MCLA 445.252(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not

revealing the purpose of a communication when it is made in connection with collecting a debt at (**Exhibit 3 and 6**); and

c.    Defendant has violated MCLA 445.252(f) Misrepresenting in a communication with a debtor 1 or more of the following:

    (i)    The legal status of a legal action being taken or threatened.

    (ii)    The legal rights of the creditor or debtor at (**Exhibit 3 and 6**);

d.    Defendant has violated MCLA 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee by continuing to seek unauthorized advances not authorized under the mortgage contract of Michigan Consumers for six years through forms at **Exhibit 2**; and

e.    Defendant has violated MCLA 445.252(d) by creating documents designed to simulate the appearance of judicial process or sanction at **Exhibit 3**; and

f.    Defendant has violated MCLA 445.252(a) by communicating with debtors in a deceptive manner at **Exhibit 3 and 6**.

**Wherefore**, Plaintiff seeks judgment against Defendants for:

a.    Statutory damages for Plaintiff in the amount of $50.00, trebled to $150.00 for a willful violation, pursuant to M.C.L. 445.257(2);

b.    Equitable, declaratory and injunctive relief pursuant to M.C.L. 445.257(1), including but not limited to, a declaration that defendant's debt collection practices violated the RCPA, as well as an injunction, enjoining Defendant from using **Exhibit 2** which violates Michigan law AND THE CONSENT ORDER attached at **Exhibit 1**; and

c.    Reasonable attorney's fees and court cost pursuant to M.C.L. 445.257(2) with judicial sanction.

d.    Actual Damages in the form of the required elevated responses, stress and out of pocket

costs of having to respond to some false debt collection lawsuits.

**Class 3- MOC CLASS ALLEGATIONS FOR ACTUAL DAMAGES AND INJUNCTIVE**

**RELIEF**

98.

Defendants have violated the MOC and is collecting debts in Michigan without

regulation and a license and has further violated the MOC, but are not necessarily limited to, the

following:

a.      Defendants violated MCL 339.915(n) by using a harassing, oppressive, or abusive

method to collect a debt, using **Exhibit3 and 6** as mentioned above;

b.      Defendants violated MCL 339.915(e) Making an inaccurate, misleading, untrue, or

deceptive statement or claim in a communication to collect a debt or concealing or not

revealing the purpose of a communication when it is made about collecting a debt at

**Exhibit 3 and 6**; and

c.      Defendants have violated MCL 339.915(f) Misrepresenting in a communication with a

debtor 1 or more of the following:

(i)      The legal status of a legal action being taken or threatened.

(ii)     The legal rights of the creditor or debtor at **Exhibit 3 and 6**; and

d.      Defendants have violated MCL 339.915(d) by using forms that may otherwise induce the

belief that they have judicial or official sanction is involved such as (**Exhibit 3 and 6**;

and

e.      Defendants have violated MCL 339.915(q) by failing to implement a procedure designed

to prevent a violation by an employee that is not regulated by the MOC as alleged above;

and

8

f.      Defendants have violated MCL 339.915(a) by communicating with a debtor in a misleading or deceptive manner such as the use of **Exhibit 3 and 6***)* as alleged above in creating the plan and scheme to sue on debts NCSLT or Defendants have no proof to pursue SPECIFIC to the DEBTOR sued; and

g.      Defendants have violated MCL 339.915a(a) by listing the name of an attorney in a written or oral communication, collection letter, or publication such as *(***Exhibit 3 and 6**); and

h.      Defendants Weltman and Shermeta have violated MCL 339.915a(b) by furnishing legal advice, or otherwise engaging in the practice of law, or representing that the person is competent to do so, or to institute a judicial proceeding on behalf of another such as *(***Exhibit 3 and 6***)*; and

i.      Defendants Weltman and Shermeta have violated MCL 339.915a(c) by sharing quarters or office space, or having a common waiting room with a practicing attorney or a lender (**Exhibit 3 and 6**); and

j.      Defendant TSI, Shermeta and Weltman have violated MCL 339.915a(d) by employing or retaining an attorney to collect a claim. **See Exhibits 3 and 6**; and

k.      Defendants have violated MCL 339.915a(f) by soliciting, purchasing, or receiving an assignment of a claim for the sole purpose of instituting an action on the claim in a court as shown through the scheme and plan above and through **Exhibits 3 and 6**.

   **Wherefore**, Plaintiff seeks judgment and INJUNCTIVE RELIEF against Defendants for:

a.      Actual damages based on the illegal interests and costs Defendants charged of each Plaintiff, pursuant to M.C.L. 339.916(1). Triple Actual damages if the Court finds Defendants' scheme and plan alleged above as willful non-compliance. M.C.L. 339.916(2); and

b.      Equitable, declaratory and injunctive relief pursuant to M.C.L. 339.916(1) to stop the plan and scheme of defendants as alleged above using (**Exhibits 3 and 6**); and

c.      Reasonable attorney's fees and court cost pursuant to M.C.L.339.916(2) with judicial sanction and Injunctive Relief.

d.      Actual Damages in the form of the required elevated responses, stress and out of pocket costs of having to respond to false debt collection lawsuits from defendants.


## IX. JURY TRIAL DEMAND

Plaintiff demands a Trial by Jury on all issues.

                                    Respectfully submitted,

August 20, 2017                     s/Brian P. Parker
                                    BRIAN P. PARKER (P48617)
                                    Attorney for Plaintiff